UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEFFERSON JONES,<br>      Plaintiff<br><br>      v.<br>MARY M. WALKER, in her individual capacity<br><br>      Defendant | Civil Action No.05-10102 RWZ |

## PLAINTIFF'S TRIAL BRIEF

**I.     Plaintiff's summary of the Case**

The Plaintiff Jefferson Jones ("Jones") was taken into protective custody by the defendant Mary Walker, a Wareham Police Officer, on June 28, 2003. Walker will testify that she did so believing Jones was intoxicated and a danger to himself. Jones will testify that he was not intoxicated and no witness will testify that there were facts supporting a conclusion that Jones was about to suffer the type of harm that would permit him to be deprived of his liberty for his own good as envisioned by Mass. G.L. ch 111B sec. 8 (the Massachusetts protective custody statute). In this civil rights case, Jones seeks damages based upon his belief that when Walker took him into custody, she "seized" him without probable cause in violation of the Fourth Amendment.

The testimony is expected to show that in the early morning of June 28, 2003, Jones took a chartered bus from Brooklyn, New York, with approximately 30 others to Onset, Massachusetts to enjoy a fishing trip aboard a boat named the Onset Chief. While at sea, Jones and several other passengers became upset because there was insufficient bait and they complained to the Captain of the Onset Chief, Benjamin Braun

("Benjamin"). Benjamin's response was to inform the passengers that the boat would be returning to shore. Benjamin, clearly overreacting to this complaint by some of his African American passengers, called his father Robert Braun ("Dad"), who was also the ship's owner and requested that the police be present when the Onset Chief arrived back at shore. Dad then telephoned the Wareham Harbormaster's Office and the Wareham Police Department and requested a police presence when the boat arrived back in Onset.

    Several police officers, including the Defendant Walker were waiting at Onset pier when the boat docked. Since Onset pier was in Walker's assigned patrol sector for the day, she was in charge. Walker will presumably testify, as she did at her deposition, that she does not have any memory of ever talking with Benjamin, Dad or any employee of the Onset Chief regarding Jones. All that she can remember is that an unknown person identified Jones as the person causing a problem on the boat and she wasn't even sure whether the problem related to intoxication or insufficient bait and who did what. A Protective Custody Report, subsequently completed by Walker, will confirm that she only had sketchy facts when she detained Walker: "unknown problem involving a passenger . . . on the Onset Chief ***** initial appraisal indicated that Jones was possibly intoxicated." In terms of other back ground facts, Jones is uncertain whether Walker will attempt to introduce racial issues into this case as Dad testified at his deposition that he had heard that there were racial issues on the Onset Chief between African Americans and Puerto Ricans and that Jones was arrested after complaining that he was singled out because he is African American.

    After someone identified Jones on the Onset Pier as the one who had been a "problem," Walker began to interrogate him. She demanded that Jones produce a license

or some form of ID so that she could check to see if he had any outstanding warrants. Then, in front a bus load of people from his hometown of Brooklyn, and without giving Jones a breathalyzer test or asking him to perform other field sobriety tests, Walker arrested Jones and handcuffed him with his hands behind his back. She will testify that regarding Jones alleged "intoxication" that his eyes were glassy, not red, his gait was unsteady, although that may have been affected by his boots and "sea legs," and he mumbled his words. She will admit that she did not smell alcohol on Jones's breath, she had no direct evidence that he had anything to drink and she did not give him a breathalyzer test or administer sobriety filed tests on the pier before taking him into custody. As soon as Walker cuffed Jones, he immediately cried out in pain, screaming that the cuffs were too tight. Eventually the cuffs were loosened and then removed but by then his wrists, particularly his right wrist, was damaged. Testimony, supported by photographs, will depict Jones's swollen and bruised right wrist.

After cuffing him, Walker escorted Jones to her squad car, and then drove him to the Wareham Police Station five miles away. At the police station, Jones was taken to the booking room and booked. However he was not charged with a crime. Instead, Walker filled out a "Protective Custody Report" at the station confirming that the problem reported to her was an "unknown problem" by a "dissatisfied customer" who was "possibly intoxicated." Shortly thereafter, a Wareham police sergeant reviewed the situation and ordered Jones released from custody. Jones was not charged with a crime and was ultimately released after being held for two hours. Jones's chartered bus then picked Jones up at the police station and it drove back to Brooklyn.

Jones's wife, Pamela, picked him up in Brooklyn and they returned to their home. Jones was still in intense pain so he called an ambulance to take him to Brooklyn Hospital. Jones was treated for injuries to his wrists and eventually released.

As a result of the handcuffing and arrest by Officer Walker, Jones developed carpel tunnel syndrome in both his wrists primarily his right wrist  He also suffered from post traumatic stress syndrome, and continues to experience pain and numbness in his hands and wrists.  Furthermore, Jones's injuries prevented him from returning to work as a carpenter at a new job obtained a week prior to the June 28, 2003 incident.  That new job would have paid him $200 a day.

**II.   There Must Be Probable Cause of Intoxication and Likely Harm to Self to Justify Taking a Person into Protective Custody**

The Supreme Judicial Court of Massachusetts has determined that lawful seizure of an individual under the authority of G. L. c. 111B § 8 requires that officers have "probable cause to believe that the person is "incapacitated" within the meaning of G. L. c. 111B § 3." Commonweath. v. O'Brien, 434 Mass. 615, 623 & n.10 (2001) citing Commonwealth v. O'Connor, 406 Mass. 112, 120 & n.6 (1989), and Commonwealth v. St. Hilaire, 43 Mass. App. Ct. 743, 747 (1997); see also Commonwealth v. Silva, 63 Mass. App. Ct. 1108, n.3 (2005).  An officer is justified in taking a person into protective custody, "if, by reason of the consumption of intoxicating liquor, he is (1) unconscious, (2) in need of medical attention, (3) likely to suffer or cause physical harm or damage property, or (4) disorderly." G. L. c. 111B § 3. Veiga v. McGee, 26 F.3d 1206 (1st Cir.1994). The Appeals Court confirmed that officers must have probable cause to believe **both** that the individual was intoxicated, and that he met one of the other three conditions.  See Commonwealth v. McCaffery, 49 Mass. App. Ct. 713, 716 & n.5 (2000).  Therefore

4

officers must show that the facts and circumstances within the officer's knowledge are sufficient to satisfy a person of reasonable caution that the individual is **both** intoxicated **and** likely to suffer or cause physical harm. Id. See Ornelas v. United States, 517 U.S. 690, 696 (1996); Commonwealth v. Gullick, 386 Mass. 278, 283 (1982) citing Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir.1985).

### III.   Walker may argue that she is entitled to Qualified Immunity but Qualified Immunity is not a defense in this case

There is a two-part test for determining whether an official is entitled to qualified immunity. Saucier v. Katz 533 U.S. 194, 200-09 (2001). The First Circuit has applied the two-part test as a three-part inquiry: first, a threshold determination of whether the plaintiff's allegations, if true, establish a constitutional violation; second, whether the constitutional right at issue was clearly established at the time of the putative violation; and third, whether a reasonable officer, situated similarly to the defendant, would have understood the challenged act or omission to contravene the discerned constitutional right. Limone v. Condon, 372 F.3d 39, 44 (1st Cir. 2004) citing Savard v. Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003) (en banc) cert denied. Qualified immunity is a question of law to be determined by the court and not the jury. Hunter v. Bryant, 502 U.S. 224, 227-28 (1991); Lewis v. Kendrick, 944 F. 2d 949, 953 (1st Cir. 1991), citing Hall v. Ochs, 817 F.2d 920, 924 (1st Cir.1987).

Applied to this case, Officer Walker violated Jones' clearly-established constitutional right to be free from unreasonable seizure and she is not entitled to qualified immunity. First, it is clearly established that unlawful seizure violates the Fourth Amendment. See Ringuette v. City of Fall River, 146 F.3d 1, 5 (1st Cir. 1998). Second, it is clearly established that in order to take someone into custody, officers must

have "probable cause to believe that the person is "incapacitated" [1] within the meaning of G.L. c. 111B § 3." Commonweath. v. O'Brien, 434 Mass. 615, 623 & n.10 (2001) citing Commonwealth v. O'Connor, 406 Mass. 112, 120 & n.6 (1989), and Commonwealth v. St. Hilaire, 43 Mass. App. Ct. 743, 747 (1997). Third, the Wareham Police Department had established guidelines for police officers applying the statute. Thus, Officer Walker had clear notice that taking Jones into protective custody without probable cause would violate his constitutional rights. Furthermore, considering the facts known to Officer Walker at the time, it is clear that her actions were not objectively reasonable. She described Jones as "possibly intoxicated" and a danger to himself. She smelled "fish and sweat," not alcohol on his breath. His eyes were not red, but "glassy," and his "gait was off," but he had been on a fishing boat all day. He was walking with a cooler on a pier toward a bus to be transported back to New York. He was surrounded by friends. He was not unconscious or in need of medical attention. Officer Walker did not perform any breathalyzer or field sobriety test at the pier. No objectively reasonable officer would rely on these facts to find that there was probable cause to believe Jones was both intoxicated by alcohol and a danger to himself as required to justify a seizure under G.L. c. 111B § 8.[2] Because no objectively reasonable officer could have probable cause to take Jones into protective custody, qualified immunity does not apply.

---

[1] An individual is "incapacitated:" "if, by reason of the consumption of intoxicating liquor, he is (1) unconscious, (2) in need of medical attention, (3) likely to suffer or cause physical harm or damage property, or (4) disorderly." G.L. c. 111B § 3. Veiga v. McGee, 26 F.3d 1206, 1210 (1st Cir. 1994).

[2] C.f. Commonwealth v. Tomeo, 400 Mass. 23, (1987) (finding defendant had probable cause to find individual was both intoxicated and dangerous under protective custody statute when, after a report that a highly intoxicated person was leaving a building, a man stumbled toward his car with keys in hand, and then dropped the keys, and upon further

Respectfully Submitted,

Jefferson Jones
By his attorneys

/s/ Michael L. Altman
Michael L. Altman, BBO #016800
Patrick Taverna, BBO #664612
Jennifer H. Lagerquist, BBO #663132
Altman Riley Esher, LLP
100 Franklin Street
Boston, MA  02110
(617) 339-7300

---

investigation, the man's breath smelled of alcohol, his eyes were red and glassy, and he insisted on driving).