UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JEFFERSON JONES,<br>      Plaintiff<br><br>      v.<br>MARY M. WALKER, in her individual capacity<br><br>      Defendant | Civil Action No. 05-10102 RWZ |

## PLAINTIFF JEFFERSON JONES'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR NEW TRIAL

The Plaintiff, Jefferson Jones ("Jones"), has moved for a new trial pursuant to Fed. R. Civ. P. 59(a)(1) on the grounds that the verdict for the Defendant is contrary to the weight of the evidence and has produced a miscarriage of justice. The jury, by virtue of its answer to question one and the court's instruction, concluded that there was probable cause to believe three things:

1. The defendant was intoxicated;
2. The cause of intoxication was by alcohol;
3. The defendant was a danger to himself or others.

However, the answer to the special question, and therefore the verdict, was against the weight of the evidence to support any of the above three conclusions; thus the conclusion that probable cause existed to seize Mr. Jones was a clear miscarriage of justice.

Rule 59(a) of the Federal Rules of Civil Procedure provides that a court may grant a new trial "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in courts of the United

States." Fed.R.Civ.P. 59(a)(1). The First Circuit has held that "[a] new trial should be granted only where the court is convinced that the jury verdict was a 'seriously erroneous result' and where denial of the motion will result in a 'clear miscarriage of justice.'" *Chedd-Angier Production Co. v. Omni Publications International, Ltd.*, 756 F.2d 930, 934 (1st Cir. 1985), quoting *Coffran v. Hitchcock Clinic, Inc.*, 683 F.2d 5, 6 (1st Cir. 1982).

Unlike a motion for judgment notwithstanding the verdict, the Court, in determining if the jury's verdict results is a "miscarriage of justice" as to merit a new trial, is "not required to look at the evidence in the light most favorable to the plaintiff [the verdict winner]." *Gonsalves v. City of New Bedford*, 939 F.Supp. 921, 924 (D. Mass. 1996), citing 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2806, p. 65 ("Thus on a motion for a new trial--unlike a motion for a judgment as a matter of law--the judge may set aside the verdict even though there is substantial evidence to support it. The judge is not required to take that view of the evidence most favorable to the verdict-winner"); *see also Alvarado Aviles v. Burgos*, 601 F.Supp. 29, 31 (D. Puerto Rico 1984) (stating that judge is not required to take the view of evidence most favorable to the verdict-winner). In considering a motion for a new trial, the court has broad power to weigh the evidence and assess the credibility of the witnesses who testified at trial. *U.S. v. Montilla-Rivera*, 115 F.3d 1060, 1067 (1st Cir. 1997).

On the other hand, "the trial judge's discretion, although great, must be exercised with due regard for the rights of both parties to have questions which are fairly open resolved finally by the jury at a single trial." *Kearns v. Keystone Shipping Co.*, 863

F.2d 177, 181 (1st Cir. 1988). A new trial may be granted only when the court finds that "the verdict is so seriously mistaken, so clearly against the law or evidence, as to constitute a miscarriage of justice." *Transamerica Premier Insurance Company v. Ober,* 107 F.3d 925, 929 (1st Cir. 1997) (internal quotation marks omitted); *accord Colasanto v. Life Insurance Company of North America,* 100 F.3d 203, 212 (1st Cir. 1996); *Sanchez v. Puerto Rico Oil Company,* 37 F.3d 712, 717 (1st Cir. 1994) (court will set aside a jury verdict only if it "is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice").

In this case, there was scant evidence that the plaintiff was intoxicated. According to Robert Braun, a report of an intoxicated male on the Onset Chief, was called in to him by his son, the captain of the boat, at about noon, more than three hours before the boat docked at the Onset Pier. Officer Walker testified that when she arrived at the pier she was made aware of two problems: the fishermen's dissatisfaction with the lack of bait and a possibly intoxicated man. When the boat landed, the captain pointed out Mr. Jones. However, Officer Walker did not testify whether she knew Mr. Jones was being pointed out because he had been a problem over the bait (in her protective custody report she refers to Mr. Jones as a "dissatisfied customer") or whether Mr. Jones was the intoxicated male referred to in the dispatch report.

Officer Walker cited Jones' "unsteady gait" as he departed the boat as evidence of his intoxication – hardly a persuasive determination, considering Jones was carrying coolers and fishing gear, wearing rubber rain boots up to his knees, and had been at sea all day. Walker also testified that Jones slurred his speech; however, she had never spoken to him before and she did not smell alcohol on his breath. Finally, she testified

3

that Jones appeared confused. Such apparent confusion, rather than being a side effect of intoxication, must be understood as Jones' valid response to a confusing situation: immediately after getting off the fishing boat he was surrounded by three police officers and a harbor master, being questioned repeatedly, knowing (correctly) he had done nothing wrong. In our multicultural world, where communication and how an individual relates to authority differs across cultures, it is hardly prudent or responsible judgment to let this ephemeral evidence rise to probable cause of intoxication.

Jones did not smell of alcohol, Officer Walker saw no alcohol containers, and she conducted no coordination tests in order to legitimately conclude that there was probable cause of intoxication. Clearly, there was no evidence whatsoever of intoxication "by alcohol," as required by statute, aside from Jones' testimony that he had two beers quite a few hours earlier. However, Walker was not privy to that information and she did not ask Jones whether he drank anything and, if so, how much and when. Without any evidence of alcohol use by Jones, Walker simply could not have had probable cause of that required element.

Walker also lacked probable cause that Jones was a danger to himself or others. She testified that he appeared confused and would not produce identification. Mere confusion is insufficient to show that Jones would harm himself or others, particularly in the context of a black man, who had done nothing wrong, surrounded by white police officers and a uniformed harbormaster. Indeed, based on the testimony at trial, Jones's so-called confusion is related solely to the demand for identification. It is therefore illogical to infer confusion sufficient for a prudent police officer to reasonably infer that

4

something was so wrong that Jones needed to be taken into protective custody for his own good or the good of others.

Most significantly, Jones had not said a word or undertaken a single action from which it could be inferred that he was going to harm himself or others. Even if one were to stretch the facts of the testimony so that Officer Walker was perceiving seriously unsteady man, slurring his speech and appearing a little confused when confronted by three police officers, that does not establish probable cause that he was going to harm himself. The Massachusetts statute was enacted to deal with people who are incapacitated so that police can take them to a safe place. Officer Walker knew that Mr. Jones was with his fishing group who were waiting for him on the pier in the bus. He also had a colleague standing next to him; he was hardly incapacitated. Thus, the facts presented, even if they show confusion, do not show confusion that would provide probable cause that Jones was going to harm himself or others. Such a determination would be mere conjecture and not based upon facts. The verdict therefore was a miscarriage of justice and seriously erroneous, and a new trial is required.

If this verdict is allowed to stand, then police have effectively been given nearly unrestricted power to seize individuals on the street who fail to immediately respond to the police by providing an ID and who fail to say "yes sir boss" while they are being confronted. It is respectfully suggested that such precedent could have disastrous consequences in Boston, a college town; thousands of college students could be taken into protective custody on any Saturday night if they are unsteady on their feet, fail to speak good English and are not compliant when the police approach them.

Respectfully Submitted,

Jefferson Jones
By his attorneys

/s/ Michael L. Altman
Michael L. Altman, BBO #016800
Patrick Taverna, BBO #664612
Jennifer H. Lagerquist, BBO #663132
Altman Riley Esher, LLP
100 Franklin Street
Boston, MA  02110
(617) 339-7300

Dated:  September 30, 2006